1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
3  BRIAN J. STRETCH (CSBN 163937)
   Chief, Criminal Division
4  SUSAN B. GRAY (CSBN 100374)
   Assistant United States Attorney
5
6  450 Golden Gate Avenue, Box 36055
   San Francisco, CA 94102
   Telephone: (415) 436-7324
7  Facsimile: (415) 436-6748
   email: Susan.B.Gray@usdoj.gov
8
   Attorneys for Plaintiff
9
                       UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                                                CV 08    0156
12 UNITED STATES OF AMERICA,         )   No.
                                     )
13              Plaintiff,           )
                                     )
14      v.                           )   **COMPLAINT FOR FORFEITURE**
                                     )
15 $100,211 IN UNITED STATES CURRENCY; )
                                     )
16                                   )
                                     )
17                                   )
                Defendant.           )
18 _____ )

19      In this in rem forfeiture action, the United States alleges:

20                          **JURISDICTION**

21      1.   This Court has jurisdiction under Title 28, United States Code, Sections 1345 and

22 1355 and Title 21, United States Code, Section 881.

23                            **PARTIES**

24      2.   Plaintiff is the United States of America.

25      3.   There is probable cause to believe that the in rem defendant currency, $100,211 in

26 United States Currency, constitutes proceeds of drug trafficking and/or were used to facilitate the

27 sale and distribution of controlled substances and are thus subject to forfeiture, pursuant to Title

28 21, United States Code, Section 881(a)(6).

4.  The defendant is currently in the custody of the United States Marshals Service in the Northern District of California. Defendant was seized during a consent search following the execution of an arrest warrant at the residence of Ricardo Rodriguez Castro and Obdulia Diaz on August 3, 2007.

## VENUE

5.  Venue lies in the Northern District of California, pursuant to Title 28, United States Code §§ 1355(b) and 1395, as acts giving rise to this in rem action occurred in this district and the defendant funds are located in this district.

## INTRADISTRICT ASSIGNMENT

6.  This matter arises in Santa Clara County because a substantial part of the events which give rise to the plaintiff's claims occurred in that county. Assignment in San Jose is proper.

## FACTS

7.  Plaintiff incorporates by reference the allegations of paragraphs one through six as though fully set forth herein.

8.  During the months of January and February 2007, Special Agents of the Drug Enforcement Administration (hereafter "DEA") were involved in an investigation of the narcotics trafficking of Miguel Palma. Using a confidential source (hereinafter "CS") agents placed telephone calls to Miguel Palma and negotiated initially for a sample and subsequently a pound of the methamphetamine Palma was selling.

9.  On February 6, 2007, DEA agents met with the CS and monitored and recorded the CS's phone calls as he spoke with Palma to order one pound of crystal methamphetamine.

10. On February 13, 2007, agents established surveillance in the parking lot of an Albertson's located at 5502 Monterey Highway in San Jose, California. Agents watched as the CS, under their direction, met with Miguel Palma to purchase one pound of methamphetamine.

11. The conversation between the CS and Palma was monitored and recorded by agents and the meeting was also video recorded by the DEA. At one point in the negotiations, Special Agent Alvarez, acting in an undercover capacity as the CS's cousin, spoke with Palma via telephone and told Palma that the sale would not go through until the CS saw the drugs. Palma

agreed and called his source of supply to bring the drugs to the meeting so that the CS could see the drugs.

12. Approximately twenty minutes later, Palma's source of supply, later identified as Ricardo Rodriguez Castro, arrived driving a green Chevrolet Tahoe, California license plate 5PBW585. Agents observed Palma meeting with Castro. Castro displayed a clear plastic bag containing a large amount of a crystalline substance.

13. At this point, the CS gave a prearranged arrest signal. Palma was arrested, but Castro fled the scene, hitting several cars before leaving the parking lot.

14. During a post arrest interview Palma confirmed that the driver of the Chevrolet Tahoe, who he called "Rica", was his source of supply. He stated that he had previously seen Rica selling crystal methamphetamine and cocaine to several neighborhood people. Palma told agents that he contacted Rica in order to obtain the one pound of crystal methamphetamine he had agreed to sell. Palma stated that Rica said that he could supply a pound of methamphetamine. Agents later identified Rica as Ricardo Rodriguez Castro.

15. On August 2, 2007, at approximately 8:51 a.m. during surveillance of 769A Church Street, Gilroy, California, Special Agent Herrera observed Castro come to a second story window wearing a blue bath robe and wave goodbye to three individuals leaving the house. Special Agent Herrera observed Castro open the window and then move away from the window.

16. On August 3, 2007, the Drug Enforcement Agency agents executed a state arrest warrant for Ricardo Rodriguez Castro at 769A Church Street, Gilroy, California. The warrant was signed on August 2, 2007, by the Honorable Judge Paul R. Teilh of the Santa Clara County Superior Court. The state arrest warrant charged Castro with the felony of California Penal Code §182 (A)(1), (conspiracy) and the misdemeanor of California Vehicle Code §20002(A), (hit and run).

17. On August 3, 2007, agents arrived at the 769A Church Street address to serve the arrest warrant. The vehicle that agents had seen Castro use in the February 13, 2007, drug transaction was parked at the curb in front of the house. Agents knocked and announced their presence several times. After waiting a reasonable amount of time, agents forced entry into the

COMPLAINT FOR FORFEITURE                                                                                                  3

1 residence.

2  18. The agents located Giovanni Rodriguez in the downstairs bedroom, Robert
3 Rodriguez and Raquel Castro, Castro's elderly parents, in the southern upstairs bedroom and
4 Castro and Obdulia Diaz's 10 year old daughter in the northern upstairs bedroom.

5  19. During a protective sweep of the house, agents observed guns, digital scales, a
6 heat sealer and packaging materials, currency and a white crystalline substance.

7  20. Obdulia Diaz (herinafter "Diaz") returned to her home after being telephoned by
8 agents. She gave the agents consent to search her house. She also opened two safes located in
9 the southern upstairs bedroom.

10  21. During the course of the protective sweep and the subsequent consent searches,
11 agents found numerous guns, drugs, scales, and drug packaging materials throughout the house.
12 In the upstairs northern bedroom and adjoining bathroom, where the agents had located Castro,
13 agents found the following: a loaded AK-47 style assault rifle with ammunition under the bed; a
14 black Contek digital scale on a shelf, a yellow Digitek digital scale on a vanity, a heat sealer and
15 packaging materials with powdery residue found on the floor, a pay-owe ledger found next to the
16 heat sealer, $5,568 in U.S. Currency, a heat sealed bag containing 26 grams of methamphetamine,
17 indicia for Castro including a past due state tax notice dated June 27, 2007, for approximately
18 $500 for the tax year 2005, 50 grams of methamphetamine in a camera case in the closet, and a
19 small heat sealed bag containing 3 grams of methamphetamine in a purse located in the closet.
20 The $5,568.00 in U.S. Currency was in the following denominations: $1 x 18, $5 x 12, $10 x 3,
21 $20 x 158, $50 x 2, $100 x 22.

22  22. In the southern upstairs bedroom, agents found the following: a .25 caliber auto-
23 loading pistol in the closet, $48,733 in U.S. Currency from the larger safe wrapped in aluminum
24 and plastic wrapping and $45,910 in U.S. Currency from the smaller safe in the closet, 5 small
25 bags containing a total of 5 grams of cocaine in a jewelry box. The $45,910.00 in U.S. Currency
26 was in the following denominations: $20 x 8, $50 x 21, $100 x 447. The $48,733.00 in U.S.
27 Currency was in the following denominations: $2 x 14, $5 x 5, $10 x 1, $20 x 16, $50 x 1, $100 x
28 483.

23. In the downstairs bedroom where agents had located Rodriguez, agents found a loaded bolt action rifle and ammunition and a non functioning revolver under the bed and a book titled "Secrets of Methamphetamine Manufacture".

24. Agents also found a camouflage bullet proof vest in an upstairs closet, a notebook with handwritten directions for cooking methamphetamine on the dining room table, a bolt action rifle with a barrel extender and a MAC-10 style submachine gun from the attic over the garage.

25. Following his arrest, Castro was advised of his Miranda rights and agreed to speak with agents. He also told agents that he uses methamphetamine and that the drugs found in the night stand of the northern upstairs bedroom were his.

26. When shown a photo of Palma, Castro told agents that he may have seen Palma before, but he did not remember. Castro admitted borrowing Diaz's Chevrolet Tahoe on occasion. Special Agent Herrera informed Castro that the Chevrolet Tahoe was on video tape arriving at the February 13 meeting with Palma and that he had been identified as the driver and source of supply. Castro denied any involvement in the attempted methamphetamine sale on February 13, 2007.

27. Diaz was arrested for Possession for Sale of Methamphetamine, California Health and Safety Code § 11378, Possession of a Firearm, California Penal Code §12022(c) and Child Endangerment, California Penal Code § 273(a) because of the close proximity of her 10 year old daughter to narcotics and firearms. She told agents she did not know about the drugs or the guns in her home because of her busy work schedule; she works seven days a week at three different jobs. When asked about the source of the currency found in her house, Diaz said that she had recently borrowed $8,000 from the bank to fix her house. She also stated she uses money from credit cards to pay her bills. She did not explain why she borrowed money from a bank or her credit cards when she had such large sums of money in her residence.

28. According to records from the State of California Employment Development Department, Castro was last employed in 2005 through June of 2006 at Ardent Systems in San Jose and Diaz was employed as of June of 2007 at Del Monaco Specialty Foods, in San Jose, California.

**CLAIM FOR RELIEF**
21 U.S.C. § 881(a)(6)

29. Plaintiff incorporates by reference the allegations of paragraphs one through twenty eight as though fully set forth.

30. Title 21, United States Code, Section 881(a)(6) provides, in part, for the forfeiture of all monies or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all monies used or intended to be used to facilitate the distribution and possession with the intent to distribute a controlled substance, including violations of Title 21, United States Code, Sections 841 and 846.

31. In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the defendant currency represents moneys furnished or intended to be furnished to another person in exchange for a controlled substance, constitutes proceeds derived from such an exchange, and was used or intended to be used to facilitate an offense, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Section 881(a)(6).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the defendant currency, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed, that judgment of forfeiture be entered against said property, and that Plaintiff be awarded such relief as may be proper and just.

Dated: Jan 9, 2008

Respectfully submitted,

Susan B. Gray
Assistant United States Attorney

COMPLAINT FOR FORFEITURE    6

| | |
|---|---|
| 1 | STATE AND NORTHERN DISTRICT OF CALIFORNIA ) |
| 2 | CITY SAN JOSE, COUNTY OF SANTA CLARA ) |

**VERIFICATION**

I, Anthony J. Herrera, state as follows:

1. I am a Special Agent for the Drug Enforcement Administration. I am familiar with the facts in the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint for Forfeiture and based upon my participation in the investigation, review of relevant investigative reports, review of documentary evidence, and discussions with other persons involved in the investigation, I believe that the allegations contained therein are true.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of January, 2008, San Jose, California.

_____
Anthony J. Herrera
Special Agent
Drug Enforcement Administration

COMPLAINT FOR FORFEITURE    8